UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GAIL MCDONNELL,
                      Plaintiff,

                                                                             10 CV 08140 (RPP)

    -against-

                                                                             **OPINION & ORDER**

FIRST UNUM LIFE INSURANCE COMPANY,

                      Defendant.
------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

        On October 27, 2010, Plaintiff Gail McDonnell ("McDonnell") commenced this action against First Unum Life Insurance Company ("UNUM") and Morgan Stanley & Co. Incorporated Disability Plan (the "Plan") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., alleging wrongful termination of Plaintiff's long term disability benefits under the Plan. On December 28, 2010, Defendants filed an Answer. On January 19, 2011, McDonnell dismissed the action against Morgan Stanley pursuant to Federal Rule of Civil Procedure (" Fed. R. Civ. P.") 41(a)(1)(A)(i). On July 7, 2011, Plaintiff moved to compel discovery pursuant to Fed. R. Civ. P. 37(a) and Local Rule 37.2. On August 3, 2011, Defendant responded in opposition to the motion. On August 10, 2011, Plaintiff submitted reply papers in further support of its motion. For the following reasons, Plaintiff's motion to compel discovery is granted.

**I.    Background**

        Plaintiff was employed by Morgan Stanley as a Managing Director earning over $4 million per year from  until January 31, 2007. (Compl. ¶¶ 8, 11; Pl.'s Mem. in Supp. of Mot. to

1

Compel Disc. ("Pl.'s Mem.") at 1 .) Plaintiff alleges that she was rendered disabled as a result of Lyme disease, Babesiosis (a tick-borne, malaria-like disease), cognitive impairment, chronic fatigue syndrome, and pain. (Id. ¶ 10.) In June 2008, Morgan Stanley contacted UNUM about Plaintiff's potential long term disability ("LTD") claim. (Def.'s Mem. in Opp'n to Pl.'s Mot. to Compel ("Def.'s Mem.") at 8.) UNUM responded that a claim "likely would not" be timely under the terms of Morgan Stanley's disability plan, but to submit it for review to determine if McDonnell was contractually eligible. (Id. at 8.) UNUM then informed Morgan Stanley that the claim was indeed untimely, that there was no legitimate excuse for the delay, and that it would be closing her claim. (Id.) UNUM informed Plaintiff that while the claim remained closed, it would review her medical records and make a decision on her claim for benefits. (Id.) UNUM asserts that based on that review using the Center for Disease Control and Prevention (CDC) guidelines, that Plaintiff's diagnosis of Lyme disease was not supported by the medical evidence submitted. (Id. at 9-10.) The medical doctors reviewing the evidence for UNUM concluded that "she had not proved her Lyme disease diagnosis" and that her disability was due to a mental or nervous condition—not Lyme disease. (Id. at 11.) After UNUM determined that the Lyme disease diagnosis was not supported, it then considered whether Plaintiff's complaints might result from another illness that would qualify her for benefits. (Id. at 10.) After reviewing testing reports by Dr. Leo Shea, Plaintiff's neuropsychologist, and the reports of three neuropsychologists, UNUM Senior Disability Specialist Elizabeth Cleale ("Cleale") concluded that Plaintiff was disabled as a result of mental illness. (Id. at 10–11; Compl. ¶ 17.)

Since the twenty-four month maximum benefit period for a mental or nervous condition had elapsed, UNUM paid Plaintiff a lump sum of $459,600. (Id. at 11.) The payment covered the period from July 31, 2007, to July 30, 2009. (Compl. ¶ 12.) Plaintiff did not receive benefits

thereafter. (Id.)  In a letter dated November 11, 2009, Cleale informed Plaintiff that her benefits had terminated subject to the two year policy limitation for mental illness. (Compl. ¶ 13; Pl.'s Mem. at 1.)  On October 1, 2010, UNUM upheld this determination after review by Denise J. Laverriere ("Laverriere"), Lead Appeals Specialist for UNUM. (Id. at 1; Compl. ¶ 26.)

Plaintiff alleges that Defendant's inherent conflict of interest as administrator and payor of claims influenced UNUM's discontinuation of her benefits. (Compl. ¶ 28-47.)  Plaintiff argues that (1) UNUM focuses its employees on claim outcomes and financial goals rather than the merits of each individual case and provides monetary incentives to terminate or deny claims, (id. ¶¶ 35-40); (2) employees were more likely to be involved in UNUM's bonus programs if they terminate or deny claims, (id. ¶¶ 41-42); and (3) UNUM has failed to take steps to reduce potential bias to "promote the accuracy of its benefit determinations." (Id. ¶ 43.)  Plaintiff also points out that the Plan gave UNUM the right to have Plaintiff submit to a physical examination of which it did not avail itself. (Id. ¶ 44.)  Plaintiff contends that a physical examination with a full file review, as opposed to medical file review alone, provides the evaluator with more information to make a more accurate claims assessment. (Id. ¶ 45.)

Plaintiff seeks to compel: (1) depositions by Plaintiff of Cleale and Laverriere, (2) production of performance evaluations and bonus/compensation information for 2008 through 2010 pertaining to Cleale and Laverriere, and (3) production of UNUM's claims determination statistics under the Plan. (Pl.'s Mem. at 1–2.)   UNUM argues that the district court's review is limited to the administrative record, making further discovery unwarranted. (Def.'s Mem. at 2.)

**II.    Standard of Review**

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) the Supreme Court held that "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit

plan gives the administrator . . . authority to determine eligibility for benefits or to construe the terms of the plan."  Where an administrator has such authority, the administrator's interpretation is reviewed for an abuse of discretion. See Metropolitan Life Insurance Co. v. Glenn, 554 U.S. 105, 111 (2008) (where plan administrator operates as both decider and payor, the *de novo* review is not appropriate); Pepe v. Newspaper and Mail Deliveries'-Publishers' Pension Fund, 559 F.3d 140, 146 (2d Cir. 2009) ("Since the terms of the Plan grant the [administrator] discretionary authority to interpret the Plan, the standard governing the district court's review, and accordingly our review here, is the arbitrary-and-capricious standard."); Kruk v. Metropolitan Life Insurance Co., 3:07-CV-01533, 2009 WL 1481543, *2 n.1 (D. Conn. May 26, 2009) ("The term 'arbitrary and capricious' is used interchangeably with the phrase 'abuse of discretion,' and either describes the deferential standard applied when an ERISA plan reserves discretion.") (internal citations omitted)).

Even under this deferential standard of review, "a court may not overturn the administrator's denial of benefits unless its actions are found to be . . . without reason, unsupported by substantial evidence or erroneous as a matter of law." McCauley v. First Unum Life Insurance Co., 551 F.3d 126, 133 (2d Cir. 2008).  A district court's discretionary power to admit evidence outside of the administrative record is subject to a showing of "good cause." Krauss v. Oxford Health Plans, Inc., 221 F.3d 279, 289 (2d Cir. 2000).  However, where such evidence is sought at the discovery stage, the plaintiff need only demonstrate "a reasonable chance that the requested discovery will satisfy the good cause requirement." Anderson v. Sotheby's Inc. Severance Plan, No. 04 Civ 8180, 2005 WL 6567123, *7 (S.D.N.Y. May 15, 2005).  "The good cause standard required to obtain evidence beyond the administrative record [at the discovery stage] is therefore less stringent than when requesting that the court . . .

consider such evidence in its final determination." Trussel v. Cigna Life Ins. Co. of NY, 552 F. Supp. 2d 387, 390-91 (S.D.N.Y. 2008)

**III.    Discussion**

Plaintiff argues that UNUM has a conflict of interest "because it serves a dual role of being both claim decider and claim payor," and thus Plaintiff should be entitled to discovery materials beyond the administrative record. (Pl.'s Mem. at 3.)  In situations where the plan administrator is both the decider and the payor, the Supreme Court has held that the administrator operates under a conflict of interest. Glenn, 554 U.S. at 114.  Where the issue is a potential conflict of interest, as opposed to challenging the reasonableness of the decision, the district court's review is not confined solely to the administrative record. See Trussel, 552 F. Supp. 2d at 390.

*Plaintiff Has Demonstrated a Reasonable Chance That the Discovery Sought Will Satisfy the Good Cause Requirement*

The limited discovery Plaintiff seeks is proper because Plaintiff has shown that there is a reasonable chance she will satisfy the "good cause" requirement  to obtain evidence outside the administrative record.  Plaintiff states that her disability benefits were improperly terminated as a result of a finding of mental illness by the claim administrators, despite the fact that she was never diagnosed as suffering from a mental disease by her treating doctors and has never been treated by a mental health provider. (Pl.'s Mem. at 1.)  Plaintiff states that UNUM's decision to terminate her benefits was based solely on the outdated and incomplete reports of the reviewing doctors employed by UNUM, and that additional contradictory medical evidence, including a Residual Functional Capacity questionnaire by a renowned Lyme Disease expert, Dr. Steven Phillips, provided during her appeal of UNUM's claim denial, was never reviewed by these

doctors. (Pl.'s Reply Mem. at 7.)  Thus, Plaintiff argues that Cleale and Laverriere based their decision on UNUM's doctors' incomplete review of the evidence. (Id.)

Furthermore, Plaintiff states that UNUM based its findings on a "strained reading" of the initial evaluation of Plaintiff's neuropsychologist, Dr. Shea.  The re-evaluation and additional testing performed by Dr. Shea on July 30, 2010, and reviewed by Laverriere on appeal, found that "McDonnell does not fit the criteria for three of the mental disease disorders: Conversion Disorder, Somatization Disorder and Undifferentiated Somatoform Disorder.  She does not meet the conditions for a Somatization Disorder as outlined by the DSM-IV." (Reply Affirmation of Scott M. Reimer dated August 10, 2011 ("Reimer Aff.") Ex. I at 9-10.)  Dr. Shea noted that Ms. McDonnell has an organic etiology for her functional decline. (Id.)  An organic disorder is "associated with changes in the structure of an organ or tissue."  American Medical Association Complete Medical Encyclopedia 924 (Jerold B. Leiken and Martin S. Lipsky eds., Random House Reference 2003).  Specifically, Dr. Shea's report stated that McDonnell did not meet the conditions for a Somatization Disorder for the following reasons:

> 1) There must be no underlying medical cause evident that could explain the patient's physical complaints.  If there is a medical condition that could be related to the complaints, the symptoms reported must be far worse than any that could be explained by the existing medical problems.  Neither criterion apply to Ms. McDonnell as it has been documented by medical records and lab reports that Ms. McDonnell has had Lyme disease and several common co-infections.
>
> 2) The *unexplained* physical symptoms must persist for at least six months.  Her symptoms have waxed and waned over a number of years but are still present.  However, this is consistent with the etiology of late stage persistent Lyme disease, particularly in cases where co-infections such as co-infections are present [sic].  Hence, her physical symptoms are not, by definition, "unexplained."
>
> 3) The symptoms must cause problems in the patients daily life or relationships or interfere with the patient achieving his or her goals.  Her reportage and that of her husband and attending physician, family, and friends all attest and support the observations that she has declined in function.

> 4) There cannot be another mental disorder that accounts for the complaints. None was demonstrated on any of the testing performed.
>
> 5) The patient cannot knowingly make false complaints of physical distress. None was demonstrated on any testing. To the contrary, during testing there was a noticeable decline in her physical energy with change in complexion/pallor, joint discomfort which required limb stretching and progressive cognitive slowing that required cessation of sessions. This was supported by reportage from family members (who know her best) who have personally observed objective manifestations of her symptoms in her face, speech and body language.
>
> 6) Furthermore, there is nothing in the results nor is there any historical evidence to suggest undifferentiated somatoform disorder, somatization disorder, a conversion disorder, body dysmorphic disorder, or hypochondriasis.

(Reimer Aff., Ex. I at 9-10 (emphasis in original).)

Plaintiff argues that the claim administrators "evidenced their bias by endorsing the opinions of UNUM's doctors when a review of the claim file (to even a lay person) reveals substantial evidence contradicting such opinions." (Pl.'s Reply Mem. at 7.) While the administrator is "not required to accord special deference to the conclusions of [Plaintiff's] physicians," Durakovic v. Building Service 32 BJ Pension Fund, 609 F.3d 133, 141 (2d Cir. 2010), "plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). As such, Plaintiff argues that it provided reliable contradictory evidence that UNUM's claims administrators chose to improperly disregard in favor of its reviewing doctor's incomplete and biased report.

Additionally, Plaintiff points out that UNUM's past history as an administrator is checkered with abusive procedures in which it has engaged in denials of benefit claims based solely on financial goals. See, e.g., John Langbein, Trust Law as Regulatory Law: The UNUM/Provident Scandal and Judicial Review of Benefit Denials Under ERISA, 101 Nw. U. L.

Rev. 1315 (2007) (detailing how UNUM has been engaged in a "deliberate program of bad faith denial of meritorious benefit claims"). Plaintiff also cites to prior benefit determination cases in which UNUM has come under increased judicial scrutiny based on improper denials of claims. See McCauley, 551 F.3d at 133 ("[W]e find First Unum's history of deception and abusive tactics to be additional evidence that it was influenced by its conflict of interest as both plan administrator and payor in denying [claimant's] claim for benefits."); Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d. 863, 867 (9th Cir. 2008) (finding UNUM boosted profits by denying meritorious claims it knew to be valid); see also Merrick v. Paul Revere Life Ins. Co., 594 F. Supp. 2d 1168, 1188 (D. Nev. 2008).

1.  Depositions of Cleale and Laverriere

Plaintiff seeks the depositions of the "individuals at UNUM who directly administered her claim and appeal." (Pl.'s Reply Mem. at 6.) A plaintiff is entitled to seek discovery through depositions in order to determine information "relevant to the issue of whether [the plan administrator] had a conflict of interest when it terminated plaintiff's benefits." Sheehan v. Metropolitan Life Ins. Co., No. 01 Civ. 9182, 2002 WL 1424592, *6 (S.D.N.Y. June, 28 2002); Kruk, 2009 WL 1481543, at *7. In opposing this discovery request, UNUM argues that any deposition be limited to Laverriere and "the narrow question whether she was given an improper incentive to reach the decision she reached." (Def.'s Mem. at 13.) However, as Cleale approved limited benefits on the basis of a mental health diagnosis – as opposed to Lyme Disease – Plaintiff's deposition of Cleale could potentially be instructive as well. Therefore, the depositions of both Laverriere and Cleale are approved, but they should be limited to ascertaining facts relating to the issue of whether the bases for their determinations were affected by a conflict of interest, as this information is unlikely to be found in the administrative record.

See Trussel, 552 F. Supp. 2d at 390; Mergel v. The Prudential Life Ins. Co. of Am., No. 09 Civ. 00039, 2009 WL 2849084, *3 (S.D.N.Y. Sept 1, 2009).

2.  Performance Evaluations and Bonus/Compensation Information for Cleale and Laverierre

Plaintiff seeks performance evaluations and bonus/compensation information of Cleale and Laverriere for 2008 through 2010 in order to investigate a potential conflict of interest that may "influence the conduct of the employees and the way that they make claim determinations." (Pl.'s Mem. at 6, 8.)  The Court finds this information appropriate for discovery to investigate a potential conflict of interest. See Hogan-Cross, 568 F. Supp. 2d at 414 ("The bases for and amounts of compensation paid to employees. . . involved in plaintiff's benefit termination itself could prove relevant to plaintiff's claim."); Kagan v. Unum Provident, No. 03 Civ. 8130, 2009 WL 3486938, *2-3 (S.D.N.Y. Oct. 29, 2009) (permitting interrogatories related to incentive compensation of persons involved in termination of LTD benefits).

3.  UNUM's Claims Determination Statistics

Plaintiff's final request is for claims determination statistics related to LTD benefit terminations and denials.  Plaintiff alleges that "UNUM had an extra incentive to terminate McDonnell's claim because Morgan Stanley terminated its contract with UNUM." (Pl.'s Mem. at 8 (emphasis in original).)  UNUM argues that information regarding claims denial "would not reveal any useful information." (Def. Reply Mem. at 16)  However, "[e]vidence of high rates of benefit denials or terminations reasonably could lead to further inquiry as to the reasons for those actions, which might prove either benign or malignant." Hogan-Cross, 568 F. Supp. 2d at 414.  The Court finds that Plaintiff is entitled to discovery of UNUM's claims determination statistics as they relate to LTD benefit terminations and denials and potentially show a variance once

UNUM no longer could expect additional premium payments from Morgan Stanley to offset its awards of benefit payments.

## IV. Conclusion

Plaintiff has shown that there is a reasonable chance she will meet the good cause requirement to obtain evidence outside the administrative record. Accordingly, Plaintiff's motion to compel discovery is granted.

IT IS SO ORDERED.

Dated: New York, New York
November 3, 2011

_____
Robert P. Patterson, Jr.
U.S.D.J.

Copies of this order were sent to:

Scott Madison Riemer
Riemer & Associates, L.L.C.
60 East 42nd Street
Suite 1750
New York, NY 10165
212-297-0700
Fax: 212-297-0730

Patrick Walter Begos
Begos and Horgan L.L.P. (CT)
327 Riverside Avenue
Westport, CT 06880
203-226-9990
Fax: 203-222-4833

11